# UNITED STATES DISTRICT COURT
## Northern District of Indiana
## South Bend Division

| | |
|---|---|
| RYAN M. FOUNTAIN,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) CASE NO.: 3:13CV 030<br>) |
| MUSICK, PEELER & GARRETT, a<br>partnership including JAMES B.<br>BERTERO,<br>    Defendants. | )<br>) **JURY DEMAND**<br>)<br>) |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND RELIEF FROM TORTIOUS CONDUCT

Plaintiff, Ryan M. Fountain ("Mr. Fountain"), for its Complaint against Defendants, the law firm of Musick, Peeler, & Garrett, a partnership including James B. Bertero ("Musick"), hereby alleges and states:

**JURISDICTION and VENUE:**

1. Mr. Fountain in an individual residing in and being a citizen of the State of Indiana, and having a primary place of business, a law firm office, at 420 Lincoln Way West, Mishawaka, Indiana 46544. Mr. Fountain is an attorney licensed to practice law in the State of Indiana. Mr. Fountain does practice law within the State of Indiana.

2. Upon information and belief:

    a. Musick is a law firm having its primary place of business at One Wilshire Blvd.,

1

Suite 2000, Los Angeles, California 90017, doing business under the trade name "Musick Peeler."

  b. Musick has five other law offices, all within the State of California.

  c. Musick is a partnership of attorneys, each of which is a citizen of the United States of America and residing in the State of California.

  d. Musick is, thus, a citizen of the State of California.

  e. Musick represents itself in advertising as being a Limited Liability Partnership, but on-line internet records of the California Secretary of State, current as of January 11, 2013, indicate no LLP filing for such an entity.

  f. Musick is not a citizen of the State of Indiana.

3. Upon information and belief:

  a. Musick has done substantial business in the State of Indiana within the past ten years.

  b. One party with whom Musick has done substantial business within the State of Indiana is Forest River, Inc.

  c. In connection with its doing business with Forest River, Inc., a partner of Musick traveled to the State of Indiana to meet with persons at Forest River, Inc., and various employees of Musick regularly telephoned and/or sent emails and postal mail to persons within the State of Indiana. Musick purposefully conducted this activity within the State of Indiana in order to derive substantial monetary gain from one or more citizens of the State of Indiana.

  d. Forest River, Inc., is a corporation organized under the laws of the State of Indiana and has its primary place of business in Elkhart County, Indiana.

  e. Forest River, Inc., has paid Musick over $ 1,000,000.00 within the past ten years

to provide various legal services to Forest River, Inc.

  f. Musick advertises its legal services to persons within the State of Indiana via the internet.

  g. Musick also provided legal services to Mr. Fountain and Peter Leigl, both citizens of the State of Indiana. Musick did so purposefully in order to derive substantial monetary gain.

4. The present dispute between Mr. Fountain and Musick arose out of Musick's business dealings with Forest River, Inc.

5. Musick published several documents to citizens of the State of Indiana which purport to describe facts of misconduct by Mr. Fountain in his professional capacity. Musick did this intentionally and through control of its agents Diana K. Rodgers and Eith R. Matthai.

6. The documents published by Musick are per se defamatory, and have caused and are likely to continue to cause damage to Mr. Fountain and to property located within the State of Indiana.

7. In connection with the defamatory statements, Musick has purposefully availed itself of the Indiana Courts to obtain a subpoena issued to Mr. Fountain to obtain documents in the possession of Mr. Fountain within the State of Indiana and testimony from Mr. Fountain within the State of Indiana. Further, Musick has, through control of its agent, Edith R. Matthai, at least twice traveled to the State of Indiana to obtain witness testimony to be used against Mr. Fountain and to further damage and/or impair property within the State of Indiana. In addition, Musick has purposefully availed itself of the Indiana Courts through a motion it filed against Mr. Fountain in the St. Joseph County Circuit Court in connection with the defamatory statements.

9. Musick is subject to personal jurisdiction within the State of Indiana in connection with its actions against and/or harmful to Mr. Fountain, his reputation and property, and his legal practice.

10. The amount in controversy between Mr. Fountain and Musick by this litigation is in excess of $ 100,000.00, exclusive of interest and costs.

11. This Court has diversity jurisdiction over the parties and subject matter of the claims between them pursuant to 28 U.S.C. §1332(a).

12. This Court has authority to declare the rights of the parties under 28 U.S.C. §2201(a) because a case of actual controversy exists between the parties within this jurisdiction.

13. This Court has supplemental jurisdiction over the parties and the subject matter of the claims pursuant to 28 U.S.C. §1367 with respect to the related state law claims herein.

14. Venue is proper in this District under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district and because a substantial part of the property that is the subject of this action is situated in this judicial district.

**EVENTS GIVING RISE TO THE DISPUTE WITH MUSICK:**

The *Trealoff* Litigation:

15. On or about November 1, 2002, litigation began in California between Forest River, Inc., and Dallen Trealoff, a former employee of Forest River, concerning the events arising in connection with Forest River's termination of Mr. Trealoff's employment. The case was captioned *Dallen Trealoff, et al. v. Forest River, Inc., et al.*, and filed in the Superior Court of the State of California for the County of San Bernardino, as Case No. SCVS 096372 (referred to herein as "the *Trealoff* litigation").

16. The law firm of Musick Peeler and Garrett, LLP, represented Forest River as trial counsel during the entire course of that litigation. James Miller, a partner of Musick, was lead trial

counsel.

17. The case went to trial in February, 2009. The trial lasted approximately six weeks. Forest River lost the case and was ordered to pay millions of dollars to Mr. Trealoff. Forest River appealed that decision, and (for the most part) lost on appeal, still being required to pay Mr. Trealoff millions of dollars.

18. Mr. Fountain's involvement in connection with the *Trealoff* litigation was substantially as follows:

    a. Starting in approximately August 2003, he was retained by Forest River for specific legal services in connection with that case, the nature of which Forest River has claimed is privileged.

    b. Afterwards, starting in 2003 and extending into 2004 (and possibly later), he was retained by Forest River for different legal services in connection with that case, the nature of which Forest River has claimed is privileged.

    c. In May of 2007, he was named as a trial witness on behalf of Mr. Trealoff.

    d. Concurrently with *Trealoff* litigation, he was trial counsel of record for Forest River in several federal court proceedings, namely the *Daljo* case before the Trademark Trial and Appeal Board, the *Weekend Warrior* case before the U.S. District Court (in Los Angeles, CA), the *Patriot* case before the U.S. District Court (in South Bend, IN), and the *Heartland/Thor* cases before the U.S. District Court (in South Bend, IN). In that regard, he monitored events in the *Trealoff* litigation to determine if evidence from one case could be used in other cases (particularly, evidence of "prior art" in connection with patent claims,

industry practices, and reasonable royalty factors under a *Georgia Pacific* analysis[1] and other intellectual property damage analyses) and with respect to the testimony of common witnesses (Mr. Trealoff was, for example, identified as an expert witness for the patent owner in the *Weekend Warrior* case).

e. At other times up to and including the trial in the *Trealoff* litigation, he was retained by Forest River for different legal services in connection with that case, the nature of some of which Forest River has claimed is privileged.

f. He was present at portions of the trial in the *Trealoff* litigation and represented the interests of certain third parties, such as John Nuckolls and Richard and Ryan Stronegger, who were asked by Forest River to be available as witnesses at trial.

g. He was admitted as "a Friend of the Court," as specifically distinguished from an admission *pro hac vice*, toward the end of the trial to protect the interests of Berkshire Hathaway Corporation and Ms. Lisa Liegl, persons who were unexpectedly called as third party witnesses late in the trial by Mr. Trealoff to testify with respect to the 2005 sale of Forest River to Berkshire and where the payment for that sale went. In that regard, the undersigned prepared and filed a letter to Judge Brian S. McCarville, the presiding trial judge in the *Trealoff* litigation, on April 1, 2009, containing certain information, some of which Berkshire, Peter Liegl, and his daughter, Ms. Liegl, considered to be personal and confidential. That letter was ordered by the Court to be Sealed.

h. Subsequent to the trial, he contacted two of the attorneys who represented Forest

---

[1] Referring to the standard analysis as a matter of patent law, first set forth by the Court in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F. 2d 295 (2d Cir.)

6

River in the *Trealoff* litigation, in the capacity as a personal friend, and suggested things they could do to repair the damage to their relationship with Forest River.

<u>The Malpractice Litigation:</u>

19. On May 14, 2012, Forest River sued Musick Peeler for professional malpractice. That malpractice claim is primarily based upon four specifically enumerated events which occurred at the trail. See, Exhibit 1 hereto, pages 4-9. The malpractice claim was filed in the Superior Court of the State of California for the County of Los Angeles - Central District, as Case No. BC484643 (referred to herein as "the Malpractice Litigation"). Forest River is seeking millions of dollars in compensation from Musick Peeler in the Malpractice Litigation.

20. Mr. Fountain was not consulted by Forest River in connection with the decision to bring the Malpractice Litigation and had absolutely no knowledge of that case or the malpractice claim made therein until June 15, 2012, when he was contacted by Michael Terrell via telephone and email, one of the attorneys representing Forest River in the Malpractice Litigation, and informed that he would be needed as a witness at some point in time. At that time, Mr. Terrell did not inform Mr. Fountain that Musick had already filed its Answer, asserting as a defense that "concurrent counsel failed to exercise reasonable care" and that the "negligence" of that counsel "proximately caused or contributed to the damages sustained by" Forest River from the alleged malpractice. See Exhibit 2 hereto.

21. On November 2, 2012, Mr. Fountain was informed by Forest River, Inc., that allegations of professional misconduct and negligence were being made against him specifically by Musick.

22. On or about September 25, 2012, Musick published to Forest River, Inc., through

correspondence mailed to Donald C. Biggs, an attorney within the State of Indiana representing Forest River, Inc., in the Malpractice Litigation, specific factual allegations which are per se defamatory. For example, Musick stated as its grounds for the concurrent counsel negligence defense that "Ryan Fountain believed that Mr. Leigl was not a good witness, based upon Leigl's prior testimony at other trials. Fountain did not tell James Miller this belief until after Mr. Leigl had testified at the Trealoff trial." Further, Musick stated in that correspondence that "Ryan Fountain and the Taft Law Firm also provided legal advice to Plaintiffs which caused or contributed to Plaintiff's alleged damages." See Exhibit 3 hereto.

24. Upon information and belief, these defamatory statements of fact concerning professional misconduct and negligence of Mr. Fountain were also made orally by Musick through control of its agents Ms. Matthai and Ms. Rodgers to Mick Terrell and/or Tracy Betz, citizens of the State of Indiana, with the intention that those persons convey those statements to Forest River, Inc., and to Mr. Leigl.

23. Since November 2, 2012, Musick has asserted in writings published to Forest River, Inc., and to Mr. Leigl that Mr. Fountain "contributed to Forest River's alleged damages" and that his negligence should be considered as an "offset" to Musick's negligence in the Malpractice Litigation.

## THE CLAIMS AGAINST MUSICK:

24. The statements of fact made by Musick about Mr. Fountain are false as literally stated. Those statements have defamatory imputation under Indiana law since they purport to be an example negligence and/or misconduct by Mr. Fountain incident to his practice of law.

25. The statements of fact were made by Musick with actual malice, as well as the implied

8

malice under Indiana law with respect to trade defamation. Specifically, Musick was aware that Mr. Fountain had for many years provided legal services to Forest River, Inc. By alleging that Mr. Fountain thought poorly of Mr. Leigl (Forest River's former owner and current President), and seeing to it that Mr. Leigl was told that, Musick specifically sought to interfere with and disrupt the business relationships between Mr. Leigl, Forest River, Inc., and Mr. Fountain. Moreover, Musick made these false statements with malice in intentional retaliation for what it perceived was an attack against Musick via the Malpractice Litigation, because Musick thought the Malpractice Litigation was originated and/or advised by Mr. Fountain. In fact, Mr. Fountain had nothing to do with the Malpractice Litigation until Musick sought to shift blame onto him in its Answer. Further, Musick made the false statements with malice in intentional retaliation for Mr. Fountain's assistance of Forest River in review and control of Musick's billings during the *Trealoff* Litigation. Further, Musick made the false statements and allegations with the specific intent to create mistrust between Mr. Leigl and Mr. Fountain, and to cause the termination of Mr. Fountain's representation of Forest River. Musick also made the false statements with the specific intent to damage Mr. Fountain's profession reputation publicly.

26. Musick's false statements are not privileged under Indiana law since they were made in bad faith and/or with grossly insufficient investigation into a factual basis and/or causal link. For example, considering that Musick represented Mr. Leigl and Forest River, Inc., during the entire six and a half years of the *Trealoff* Litigation, including through numerous personal conferences with Mr. Leigl, preparation for and defense of his deposition in that case, and preparation for his trial testimony in that case, to suggest that Mr. Fountain's belief about Mr. Leigl could have had any impact on the specific instances of malpractice alleged by Forest River, Inc., against Musick or upon

the outcome of the *Trealoff* Litigation, is nothing short of ludicrous. In any event, Musick had an affirmative professional obligation to exercise its independent professional judgement, and did in fact do so with respect to the suitability of Mr. Leigl as a witness. Thus, as a matter of law, the "facts" asserted by Musick about Mr. Fountain's "belief" could have had no causal impact the trial events. To assert irrelevant facts as a defense against the malpractice claims against it, is evidence of Musick's bad faith in making those assertions.

27. Musick did not conduct an appropriate factual or legal investigation with respect to the allegations it has made against Mr. Fountain, and Musick did not instruct its agents, Ms. Matthai and Ms. Rodgers, to do so, and those agents did not in fact do so. If such an investigation had been conducted, it would have been obvious that the allegations were groundless and improper. Musick made the allegations against Mr. Fountain in reckless disregard of the facts and the applicable law.

28. Musick made those allegations with the specific intent of saving itself millions of dollars in potential liability to Forest River, Inc. Musick made those allegations with the intent to shift the potential liability to Mr. Fountain.

29. Musick's bad faith in making the assertions against Mr. Fountain is consistent with its bad faith in making unfounded and illogical assertions against the Taft Law Firm and the Jones Day law firm in its other defenses in the Malpractice Litigation.

30. Musick's bad faith in making the assertions against Mr. Fountain is consistent with its practice in other malpractice litigation against it of automatically blaming someone else for the losses sustained by its clients.

31. Mr. Fountain was not negligent with respect to the legal services he provided to Forest River, Inc., in connection with the *Trealoff* Litigation. Mr. Fountain did not engage in any

10

professional misconduct in connection with that lawsuit. Mr. Fountain's conduct did not cause the professional misconduct or negligence which Forest River, Inc., asserts was done by Musick.

32. Upon information and belief, the professional misconduct or negligence which Forest River, Inc., asserts was done by Musick was caused or the damage from that malpractice was exacerbated in whole or part by:

    a. Musick accepted more litigation work than it could properly handle if the cases went to trial, the *Trealoff* Litigation being one such case.

    b. Musick accept the *Trealoff* Litigation with the expectation that it would never have to bring the case to trial.

    c. Musick failed to fully understand and recognize all of the legal issues raise by Mr. Trealoff's claims against Forest River, Inc., and Mr. Leigl.

    d. Musick did not adequately staff the case after it accepted the representation.

    e. Musick was involved in a fee dispute with Forest River, Inc., at the time of trial which resulted in a cut-back of legal services which adversely affected the quality of its legal services, without the consent of Forest River, Inc.

    f. Musick breached its contractual obligations to Forest River, Inc., with respect to the actions which needed to be taken at trial once it was discovered that Mr. Miller was suddenly afflicted with massive "studdering" during his trial presentations. Specifically, Robert G. Warshaw, a partner of Musick, promised and assured Forest River, Inc., at the end of the first day of trial that this serious and vastly detrimental problem would be immediately solve by Musick, but Musick did not do so, and that problem contributed substantially to the alleged malpractice.

    g. Musick failed to follow the recommendations made by Mr. Fountain at various

times during the litigation, including for example, Mr. Fountain's specific recommendation that Mr. Leigl be personally present during closing arguments.

33. Mr. Fountain's professional reputation is adversely affected by the allegations made by Musick.

34. Mr. Fountain's business, contractual, and professional relations with Forest River, Inc., and Mr. Leigl have been adversely affected because of the allegations made by Musick.

35. The allegations of Musick have caused a reasonable apprehension by Mr. Fountain that Musick and/or Forest River, Inc., may cause a complaint to be made against him for violation of the applicable attorney disciplinary rules, and that contribution may be sought from him for the damages alleged against Musick.

36. Mr. Fountain is not a party to the Malpractice Litigation and has no right to participate therein as a non-party to defend himself and his reputation or to appeal from any erroneous findings of fact or conclusions of law made against him. The parties thereto have refused to provide him with copies of relevant witness testimony against Mr. Fountain and other documents, such as the transcript of the *Trealoff* Litigation trial, needed to refute the allegations made by Musick.

37. The actions taken by Musick constitute actionable trade defamation under Indiana law. The actions taken by Musick create a case in controversy between Musick and Mr. Fountain as to the extent of Mr. Fountain's responsibility for the damages claimed against Musick. The actions taken by Mr. Fountain create a case in controversy between Musick and Mr. Fountain concerning the existence of any professional misconduct or negligence by Mr. Fountain in connection with the *Trealoff* Litigation.

38. Accordingly, a case of actual controversy exists between the parties and within the

jurisdiction of this Court that is now ripe for a declaration of the rights of the parties by this Court under 28 U.S.C. §2201. Further, Mr. Fountain seeks relief against Musick under Indiana state law for trade defamation.

**JURY DEMAND:**

To the full extent permitted by law, Mr. Fountain requests trial of this case by jury.

**RELIEF SOUGHT:**

Mr. Fountain requests this Court enter Judgement against Musick, declaring and finding that:

A. Mr. Fountain committed no professional misconduct with respect to the *Trealoff* Ligitation and has no liability for damages or contribution in connection with the Malpractice Litigation,

B. Musick has caused trade defamation against Mr. Fountain and is enjoined from further action in that regard, and

C. All such other relief as may be just and proper.

All statements of fact made herein are made upon personal knowledge and/or information and belief of the undersigned, upon pain of perjury under Indiana law.

Dated: January 14, 2013

Respectfully submitted,

_____
Ryan M. Fountain (#8544-71)

_RyanFountain@aol.com_
420 Lincoln Way West
Mishawaka, Indiana  46544
Telephone: (574) 258-9296
Fax: (574) 256-5137