## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RYAN M. FOUNTAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:13-CV-30-TLS |
| | ) | |
| MUSICK, PEELER & GARRETT, a | ) | |
| Partnership including JAMES B. | ) | |
| BERTERO, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Ryan M. Fountain, practices law in the State of Indiana. He, along with the

California law firm of Musick, Peeler & Garrett, defended Indiana corporation Forest River, Inc.,

in litigation in California state court. After a jury trial resulted in Forest River incurring

substantial damages, the company sued Musick Peeler for professional malpractice. In defense of

the malpractice action, Musick Peeler has alleged that Fountain committed professional

negligence that contributed to the damages Forest River sustained in the California litigation. As

a result of these and other similar allegations, Fountain is suing Musick Peeler for trade

defamation and interference with his contractual relations. He seeks a declaration from this Court

that he committed no professional misconduct in the California litigation, and has no liability in

connection with Forest River's malpractice suit. Fountain also requests that the Court declare

that Musick Peeler has caused trade defamation against him and enjoin Musick Peeler from

further defaming him. Musick Peeler has moved to dismiss the Complaint [Mot. to Dismiss, ECF

No. 8] on grounds that Indiana's absolute privilege shields it from liability for defamation or any

other tort, and that the Declaratory Judgment Act is not available to declare nonliability for past

actions. Additionally, Musick Peeler has filed a Motion for Rule 11 Sanctions [ECF No. 12] on

grounds that Fountain's claims are not warranted by existing law, do not present a nonfrivolous argument for changing existing law, and have been brought for the improper purpose of disrupting discovery in the malpractice suit and to harass Music Peeler.

**BACKGROUND**

**A.      The California Employment Litigation**

In late 2002, Dallen Trealoff sued Forest River and its President and CEO, Peter Liegl, in California state court for unpaid sales commissions and various torts related to his termination from Forest River's employment (the Employment Litigation). Forest River hired Musick Peeler to defend the Employment Litigation. James Miller, a partner at Musick Peeler, was lead trial counsel. Fountain also represented Forest River in connection with the Employment Litigation, and was actively involved with the defense. In 2009, a six week jury trial resulted in a judgment (after appeal) against Forest River for about $8 million.

**B.      The California Malpractice Litigation**

In May 2012, Forest River sued Musick Peeler in California state court, alleging legal malpractice in connection with the Employment Litigation (the Malpractice Litigation). The complaint alleged seven specific instances of negligence in the handling of the case, but also noted that the defendants "were negligent in their representation of Forest River and Liegl in . . . respects other than those specifically described." (First Amended Complaint ¶ 47, ECF No. 1-1.)

In its answer, Musick Peeler denied the allegations and pled numerous affirmative defenses, including various defenses alleging that Forest River's damages were caused by the

wrongful conduct, comparative fault, or negligence of third parties, concurrent counsel, or Forest River's own agents, attorneys, or advisors. In interrogatories, Forest River asked Musick Peeler to provide the facts upon which it based its affirmative defenses. With regard to certain of these defenses Musick Peeler wrote:

> Several jurors told [Musick Peeler], after the trial, that they perceived Liegl as a "bully" and a "liar." Ryan Fountain believed that Mr. Liegl was not a good witness, based on Liegl's prior testimony at other trials. Fountain did not tell James Miller this belief until after Mr. Liegl had testified at the Trealoff trial.

(Resp. to Interrogs. 17, 20, 26, ECF No. 9-1.)  Musick Peelers' fifth affirmative defense was that Forest River consulted separate attorneys and advisors regarding the matters at issue in the Malpractice Litigation, and that it could not be held responsible for any injury caused by the actions or advice of those agents, attorneys, or advisors. Its thirteenth affirmative defense was that the negligence of predecessor, successor, or concurrent counsel proximately caused or contributed to the damages sustained by the Plaintiffs, if any, and that the damages should be attributed and reduced accordingly. Interrogatory responses explaining the basis for these defenses identified the law firm that represented Forest River on appeal, and stated that Fountain "also provided legal advice to Plaintiffs which caused or contributed to Plaintiffs' alleged damages." (Resp. to Interrogs. 29, 54.)

## DISCUSSION

### A.     Standard of Review–Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Requirements for stating a claim under the federal pleading standards are straight forward. A pleading that states a claim for relief must

set forth "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). In considering motions to dismiss for failure to state a claim, "[courts] construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A plaintiff . . . must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* at 1083 (quotation marks and citations omitted). However, a plaintiff can plead himself out of court if it would be necessary to contradict the complaint in order to prevail on the merits. *Id.* at 1086.

**B.      Indiana's Absolute Litigation Privilege**

A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). The parties agree that Indiana supplies the substantive law applicable to this case. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (because none of the parties raised a choice of law issue, the substantive law of the forum state applied).[1] This Court is obligated to apply the law of Indiana as it believes the Indiana Supreme Court "would

---

[1] Musick Peeler asserts that the law of the forum state should apply because the same outcome is achieved under both Indiana's and California's laws concerning the privilege that attaches to statements made in judicial proceedings. Although Fountain does not agree that the laws of the two states are substantially the same, he submits that an Indiana choice of law analysis leads to the application of Indiana law. Fountain thus accepts the application of Indiana law without further discussion.

apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) (citing *Erie*, 304 U.S. at 80). If the Indiana Supreme Court has not decided the issue, the rulings of Indiana's intermediate appellate courts are accorded great weight, unless "persuasive indications" exist that Indiana's highest court would decide the case differently. *Id.*

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (citing *Wilkins v. Hyde*, 41 N.E. 536, 536 (Ind. 1895) and *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998)). The privilege is intended to "preserv[e] the due administration of justice by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims." *Id.* (citations and internal quotation marks omitted). The privilege recognizes that the "public['s] interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged." *Miller v. Reinert*, 839 N.E.2d 731, 735 (Ind. Ct. App. 2005) (citation omitted). "'Lawsuits are not peace conferences. Feelings are often wounded and reputations are sometimes maligned.'" *Estate of Mayer v. Lax, Inc.*, — N.E.2d —, 2013 WL 5516465, at *5 (Ind. Ct. App. Oct. 7, 2013) (quoting *Briggs v. Clinton Cnty. Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 998 (Ind. Ct. App. 1983)). The privilege is only "abrogated when the statements are not relevant and pertinent to the litigation or do not bear some relation thereto." *Van Eaton*, 697 N.E.2d at 494.

5

Fountain lodges two main attacks against application of the privilege in this case. First, he challenges whether the statements he has identified as defamatory were relevant and pertinent to the malpractice proceedings. He contends that any belief he held regarding Liegl's ability as a witness is irrelevant to the seven specific instances of malpractice Forest River identified in the Malpractice Litigation complaint, and thus irrelevant to the actual legal and factual issues in that case. Musick Peeler asserts that its nonparty comparative fault defenses were not an attempt to allege that Fountain caused any of the specific acts of malpractice Forest River alleged but were, instead, allegations related to the elements of causation and damages.

In determining whether a statement is relevant and pertinent, such that it is absolutely privileged, Indiana "courts favor a liberal rule." *Miller*, 839 N.E.2d at 735; *Briggs*, 452 N.E.2d at 997. Only those allegations that are "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt [their] irrelevancy and impropriety" are not covered by the privilege. *Miller*, 839 N.E.2d at 735. Statements "need not be in every case material to the issues presented by the pleadings" as long as they are "legitimately related" to the litigation "or so pertinent to the subject of the controversy that it may become the source of inquiry in the course of the trial." *Briggs*, 452 N.E.2d at 997 (quotation marks omitted).

The Court agrees with Musick Peeler that statements relevant to the Malpractice Litigation are not limited to those disproving Forest River's seven specific allegations of malpractice. Establishing legal malpractice in California requires a plaintiff to prove a proximate causal connection between the attorney's professional breach and the resulting injury, and actual loss or damage resulting from the negligence. *Ambriz v. Kelegian*, 53 Cal. Rptr. 3d 700, 708 (Cal. Ct. App. 2007). The method for proving the causation element, likened to a "trial within a

trial," is an objective determination of what should have been the result in the underlying proceeding. *Id.* at 708–09. Musick Peeler's allegations concerning Fountain's possible contribution to the damages suffered by Forest River in the underlying Employment Litigation were not "palpably irrelevant to the subject matter of the controversy." To the contrary, the allegations at issue—that Fountain provided legal advice during the Employment Litigation and that Fountain neglected to inform lead counsel of his belief that Liegl was not a credible witness—are relevant and pertinent to Musick Peeler's defenses that Forest River's damages were caused or contributed to by a third party, and that Musick Peeler cannot be held responsible for any injury caused by the actions or advice of other counsel.

For his second attack on the privilege, Fountain asks the Court to consider applying a qualified privilege, meaning that only statements that are material, and made with probable cause and without malice qualify for the privilege. Fountain acknowledges that Indiana has not explicitly adopted the standard that he proposes for the parameters of the privilege, and instead points to a minority line of cases existing in Louisiana and other unspecified "cases in the United States." (Resp. 18.) He states that "reasonable minds can differ as to the scope of what public police should permit in the orderly administration of a judicial system," (*id.*) and argues that because Musick Peeler's statements were false, made with improper motive, and lacked substantive merit, they should not be protected.

The Court finds no persuasive basis to deviate from the rule in Indiana that the absolute privilege protects relevant statements made in the course of a judicial proceeding without regard to the "motive" behind the statements. *Hartman*, 883 N.E.2d at 777; *Van Eaton*, 697 N.E.2d at 494. There is nothing in the case law about the privilege to suggest that malice, which goes to the

speaker's intent, is excluded from other motives. Moreover, because malice is an element of defamation, *see Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258, 261 (Ind. 1994); *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), the law already assumes that offending statement was made with malice, but protects it nonetheless if it was relevant and pertinent to the litigation. In the absence of malice, the privilege would not even be necessary. Indiana courts, in their consideration of the competing interests involved in the due administration of justice, have adopted a rule that favors protecting litigants who make statements in the course of judicial proceedings even if those statements otherwise wrong another person. The only qualification to the privilege is that the statement be relevant and pertinent to the matter in controversy. *See Stahl v. Kincade*, 192 N.E.2d 493 (Ind. Ct. App. 1963) (holding privilege not applicable where the defendant's counterclaim alleged that the plaintiff was living in an adulterous relationship with a married man and sought an injunction prohibiting the plaintiff from doing so in response to her suit for nuisance and trespass); *Miller*, 839 N.E.2d at 735.

Because the requirements for applying Indiana's absolute privilege are satisfied, Fountain's defamation claim cannot proceed. The privilege also prevents Fountain from using Musick Peeler's statements as a basis for claiming interference with his contractual or business relations. *Estate of Mayer*, — N.E.2d —, 2013 WL 5516465, at *7 ("Other torts related to defamation, or relying upon defamatory statements as proof of wrongdoing, may also be barred by the absolute privilege"); *Watters v. Dinn*, 666 N.E.2d 433, 437–38 (Ind. Ct. App. 1996) (holding that statements made in course of judicial proceedings were privileged and thus could not give rise to tort liability for intentional infliction of emotional distress).

**C.     The Declaratory Judgment Act**

Fountain asks the Court to declare that he is not liable for his past conduct in connection with the Employment Litigation because he committed no professional misconduct, and thus he has no liability in connection with the Malpractice Litigation. Fountain also requests that the Court declare that Musick Peeler has caused trade defamation against him and enjoin Musick Peeler from further defaming him.

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Congress promulgated the Act to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary decided to sue him after further damages had accrued. *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 577 (7th Cir. 1994); *Cunningham Bros. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969).

First, to the extent that Fountain seeks a declaration that Musick Peeler is engaging in defamation in the Malpractice Litigation, or an injunction preventing future defamation (*see* Pl.'s Mem. 23 (asserting that "part of the relief" that "presumably" would be awarded to him in this action is "an injunction against continued publication of the false allegations anywhere, even in the Malpractice Litigation")), his claim is barred by Indiana's absolute litigation privilege. Second, with respect to Fountain's request that this Court declare that it was not his actions or inaction that contributed to the damages Forest River may have suffered due to legal

9

malpractice, the finding is better left to the California tribunal. The purpose of the Act is not implicated in this case. A ruling by this Court would not help Fountain avoid the accrual of avoidable damages owing to Forest River. Any damages suffered by Forest River have already been incurred. *See, e.g.*, *Friedman v. Geller*, 925 F. Supp. 611, 613–14 (E.D. Wis. 1996) (dismissing a declaratory judgment action by attorney seeking declaration of nonliability of malpractice because if the attorney committed malpractice, the harm was done and the damage was fixed).

**D.    Motion for Sanctions**

Rule 11 requires that an attorney or party, certify to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that any pleading presented to the court is not presented for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the claims and legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "[A] frivolous argument is simply one that is 'baseless or made without a reasonable and competent inquiry.'" *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (quoting *Independent Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 969 (7th Cir. 2000)).

Under Rule 11(c), a district court may impose sanctions on a party, his counsel, or both for violating Rule 11(b). Fed. R. Civ. P. 11(c). The court undertakes an "objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut.*

*Ins. Soc. v. Office and Prof'l Emps. Int'l Union*, 443 F.3d 556, 560 (7th Cir. 2006). The inquiry

under Rule 11 is objective; there is no need to find that the plaintiff acted in bad faith. *Nat'l*

*Wrecking Co. v. Int'l Broth. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993). The

Notes of the Advisory Committee for Rule 11 suggest that in deciding whether Rule 11 has been

violated with respect to arguments for extension, modifications, or reversals of existing law or

for creation of new law, the court should take into consideration the extent to which plaintiff

found some support for his theory, even if only in minority opinions.

Fountain's claims were colorable enough to avoid sanctions for frivolity. Although all of

his arguments are losers, they do not rise to the level of objective groundlessness required for

Rule 11 sanctions. The combination of arguments he set forth relating to public policy, the

pertinence of the statements, the fact that the Indiana case adopting the privilege made note that

there was no actual malice shown in the complaint in that matter,[2] and minority views from

---

[2] The statement appeared in the context of the following analysis:

> It is well settled by many authorities that there are occasions upon which words may be
> spoken or written of a person, whereby the implication of malice which ordinarily arises
> from the words themselves is destroyed. Among these privileged classes or occasions is a
> proceeding in due course of law. No actual malice is shown in the complaint, but it
> appears that the words were written and published in a petition expressly authorized by
> statute, to be filed in a proceeding in court, and that the alleged libelous words were but
> the statutory grounds which, if found to exist, would warrant the court, under this statute,
> to award the custody of appellant's children to said board. It is obvious, therefore, that
> appellant's alleged cause of action arose out of a proceeding in court, in a matter
> expressly sanctioned by the statutes of the state, and comes broadly within the rule to
> which we have referred. The reason upon which the rule is founded is the necessity of
> preserving the due administration of justice. As to whether the charge be true or false, or
> whether it be sufficient or not to effect the object in view, if it be made in the due course
> of a judicial or legal proceeding, it is privileged, and cannot be made the basis of an
> action for defamation of character.

*Wilkins v. Hyde*, 41 N.E. 536, 536 (Ind. 1895). From this case alone it is clear that the privilege destroys
any implication of malice. It is not clear from *Wilkins* whether actual malice, since it was not present,
would have any impact on application of the privilege. However, later cases clearly stated that the

another jurisdiction are sufficient to convince this Court that Fountain's argument for "revisiting the original purpose of the absolute privilege rule to clarify" what type of statements qualify as privileged (Pl.'s Resp. 1) was made after reasonable and competent inquiry.

Musick Peeler's proof that Fountain filed the defamation suit for the purpose of disrupting discovery in the Malpractice Litigation and to harass Musick Peeler is Fountain's refusal to cooperate in discovery on grounds that it constituted prelitigation discovery related to his defamation claims, and his assertion that discovery in this cause would include personal financial and client information and litigation practices. Fountain makes the valid point in response to Musick Peeler's contention that the purpose of the filing was to disrupt discovery when he notes that his ability to respond to certain inquires was blocked by Forest River's assertion of privilege. Certainly, the consequences of his refusal to cooperate with discovery in the Malpractice Litigation is an issue more appropriately determined by the California court, which is intimately aware of the facts surrounding the discovery disputes. Fountain's assertions regarding the potential scope and subject of discovery does not support an inference of harassment. The statement was followed by a suggestion that the parties request the court to enter a protective order. A review of all the materials leads the Court to conclude that the more likely purpose of Fountain's suit was an attempt to protect his interests as it related to statements that harmed his business relationship with Forest River.

Having reviewed the submissions in this matter the Court finds that, even if Fountain committed violations of Rule 11(b), sanctions would not act as a deterrent because Fountain

---

privilege was absolute, and applied even if they were made with an "improper motive." *Van Eaton*, 697 N.E.2d at 494; *AAFCO Heating & Air Conditioning Co. v. Nw. Pubs., Inc.*, 321 N.E.2d 580, 583 (Ind. Ct. App. 1974).

himself believed in the merits of his claim. *See* Fed. R. Civ. P. 11(c) (noting that the court "may" impose an appropriate sanction). The Court has no basis to believe, either from Fountain's conduct in this matter or any other case, that Fountain deliberately ignored or misstated case law, or filed the suit to harass Musick Peeler or gain leverage in other litigation.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion to Dismiss [ECF No. 8] the Plaintiff's Complaint in its entirety and DENIES the Defendant's Motion for Rule 11 Sanctions [ECF No. 12].

SO ORDERED on October 17, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION